GARMAN TURNER GORDON LLP
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@gtg.legal
TERESA M. PILATOWICZ, ESQ.
Nevada Bar No. 9605
E-mail: tpilatowicz@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 725.777.3000
*Attorneys for Plaintiff*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>PIGEONLY INC. dba FOTOPIGEON,<br><br>Debtor. | CASE No. 24-10355-nmc<br><br>Chapter 11 |
| PIGEONLY INC. dba FOTOPIGEON,<br><br>Plaintiff,<br><br>v.<br><br>ITRIA VENTURES LLC<br><br>Defendant. | Adversary No.<br><br><br><br>**COMPLAINT** |

Pigeonly Inc. dba Fotopigeon ("Plaintiff" or "Pigeonly"), debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby files this *Complaint* against Itria Ventures, LLC ("Defendant" or "Itria") and states as follows:

**I.
JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.

2. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(F), (H), (K), and (O).

3. Venue is proper in this Court pursuant to 28 U.S.C. §§1408 and 1409, because the Plaintiff's case is pending before the Bankruptcy Court.

4. The procedural grounds for the relief requested herein is Federal Rule of Bankruptcy Procedure 7001.

5. This adversary proceeding relates to the above named and numbered chapter 11 case pending in the District of Nevada.

6. Pursuant to Federal Rule of Bankruptcy Procedure 7008, Plaintiff consents to the entry of final orders or judgment by the bankruptcy judge if it is determined that the bankruptcy judge cannot, absent consent of the parties, enter final orders or judgment consistent with Article III of the United States Constitution.

## II.
## PARTIES

7. Plaintiff is the debtor and debtor in possession in the above-captioned Chapter 11 Case. Plaintiff is a Delaware corporation. At all relevant times, Plaintiff's principal place of business has been in Clark County, Nevada.

8. Defendant Itria Ventures LLC ("Defendant" or "Itria") is a limited liability company organized under the laws of the State of Delaware. At all relevant times, Defendant's principal place of business and headquarters has been at One Penn Plaza, Suite 3101, New York, NY 10119. Defendant does business in the State of Nevada and may be served by and through its registered agent Corporation Service Company at 112 North Curry Street, Carson City, Nevada 89703.

## III.
## FACTS

9. On January 26, 2024 (i.e., the Petition Date), the Plaintiff filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court").

10. Plaintiff is authorized to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11. No statutory committee has been appointed.

12. Defendant was formed to provide financial instruments, with the economic substance of very high interest loans, to struggling small and mid-sized businesses.

13. Defendant has engaged in a fraudulent and illegal scheme to extract funds from small and mid-sized businesses through short-term loans at usurious interest rates through financial loan instruments they call "Receivables Sale Agreements" ("RSA"s).

14. Through illegal RSA transactions, such as the transactions at issue in this lawsuit, Defendant has illegally collected funds from struggling small and mid-sized business in Nevada and nationwide, often driving business owners into ruinous debt and bankruptcy.

15. Defendant claims to help struggling small and mid-sized businesses by providing rapid access to funds without a lengthy, cumbersome application process and despite poor credit or no credit.

16. But the reality is, Defendant's transactions are illegal, usurious, fraudulent loans, with which Defendant debits from Plaintiff's bank account with alarming frequency (the "Periodic Amount").

17. Defendant drafted, proposed, and on April 28, 2022, entered into a certain funding agreement with Plaintiff memorialized in an RSA (hereinafter the "Loan Agreement") pursuant to which Defendant made a loan of money to Plaintiff (the "Loan"). A copy of the Loan Agreement is attached hereto as **Exhibit 1**. The Loan Agreement fraudulently described the deal as a "Receivables Sale Agreement". New York law applies to the Loan Agreement and to this dispute.

18. Defendant falsely stated in the Loan Agreement that it is buying a portion, which Defendant calls a "Purchased Percentage," of Plaintiff future receipts of revenue/receivables. Defendant set Plaintiff's payments under the Loan Agreement to a fixed, recurring weekly amount of $1,953.13 (the "Periodic") that Defendant fraudulently stated reflects a 1.29% Purchased Percent of the merchant's future revenue.

19. Plaintiff actually received $73,000.00 in net funding (the "Net Funding") after deductions were made from a purchase price of $75,000.00 (the "Purchase Price"). The Loan Agreement defined the so-called "Amount Sold" as $93,750.00.

20. Defendant made the weekly $1,953.13 ("Remittance") ACH withdrawals from Plaintiff's bank account.

21. Defendant has already paid $65,000.00 to Defendant.

22. When Plaintiff stopped making payments, Defendant sent collection letters to Debtor's customers demanding payment of Plaintiff's receivables from Plaintiff's customers to Defendant. This severely harmed Plaintiff's business.

23. Defendant's demands to Plaintiff's customers were wholly improper as Defendant was not properly perfected in Plaintiff's assets and U.S. Eagle Federal Credit Union, among others, held priming liens to the extent Defendant had any lien rights.

24. On July 5, 2023, Plaintiff demanded an additional $40,000.00 in payment to "settle" an allegedly even greater amount that Defendant purportedly still owed Plaintiff. Were Defendant to make such payment, then Defendant would have paid $105,000.00 on a $75,000.00 loan as of July 5, 2023. This amounts to $30,000.00 of interest and $75,000.00 of principal.

25. $30,000.00 is 40.00% of $75,000.00.

26. From April 28, 2022 to July 5, 2023 is 1.104 years (1 year + 38 days/365 days).

27. 40.00% divided by 1.104 years = **36.23%** which is the effective annual interest rate of the Loan. This amounts to illegal usury.

28. The 36.23% annual interest rate on the Loan not only exceeds the 16% civil usury rate, but also exceeds the 25% criminal usury rate under applicable New York law.

29. Defendant misrepresented that if Plaintiff's revenue declines in the future, the merchants can "reconcile" their past payment amounts accordingly, obtaining refunds for past payments—and adjusting for future payments as well—so that Plaintiff would not be paying more than a set percentage of its revenue. Defendant also falsely stated in the Loan Agreement that the transaction was open-ended, such that the advance of funds may be paid off over a long term if Plaintiff's receipt of revenue slows down.

30. All these representations are a sham, created by Defendant to lure Plaintiff to sign the Loan Agreement and to evade New York usury law by disguising the loan as something it is clearly not. In reality, the Loan Agreement is a fraudulent and illegal usurious loan, not a purchase of receivables or revenue.

31. Defendant collected on the Loan Agreement according to the fixed weekly Remittance of $1,953.13 that had no connection to the Purchased Percentage of revenues stated in

the Loan Agreement. Plaintiff's revenues fluctuated and varied widely from week-to-week and month-to-month, yet Defendant debited the same fixed Remittance from Plaintiff's bank accounts, regardless of declines in Plaintiff's revenue.

32. The reality was that the weekly Remittances were not tied to Plaintiff's revenues. It was an illusory attempt to get around usury laws.

33. Defendant promised to perform reconciliations in order to adjust the daily Remittance amount to reflect Plaintiff's revenues as they fluctuated. Defendant's promises of payment reconciliation are a fraud. Defendant failed to follow the purported adjustment to the daily Remittance and reconciliation process specified in the Loan Agreement, and manipulated the default provisions so as to put the remedy of reconciliation out of reach for Plaintiff. This made it impossible for Plaintiff to qualify for fair refunds of excess payments collected by Defendant when Plaintiff's intake of revenue declined.

34. Defendant falsely and fraudulently declared Plaintiff in default when Plaintiff merely had insufficient funds in its bank account to cover Defendant's daily debits of the Remittance. After the bogus claim of Plaintiff's default, Defendant sought immediate recovery, not only the missed Remittance payments but also Plaintiff's entire remaining balance.

35. Defendant's fraudulent assertion of default by Plaintiff, put the remedy of reconciliation out of reach for Plaintiff. This made it impossible for Plaintiff to qualify for fair refunds of excess payments collected by Defendant when Plaintiff's intake of revenue declined.

36. The Loan Agreement also required the Loan to be personally guaranteed and stated that it would be secured against a vast array of Plaintiff's assets, far beyond the revenue Defendant purported to be purchasing.

37. Because the Loan Agreement was, in substance, monies to be paid back with interest in fixed payments, that in practice was alterable only at Defendant's whim, the Loan Agreement was and is a usurious loan, fraudulently cloaked as a purchase of receivables.

38. Defendant did not determine whether the Remittance in fact reflected an estimate of the Purchased Percent of Plaintiff's receipts of revenue, and Defendant did not reconcile the Remittance to the actual revenues of Plaintiff.

39. When Plaintiff's revenues declined after the Loan Agreement was entered into, the daily Remittances became much higher than Plaintiff's business could sustain. Yet Defendant would not adjust the Remittance, or make refunds, based on a reconciliation pursuant to the Loan Agreement.

40. In practice, prospective changes to daily Remittance amounts were wholly at the discretion of Defendant, and did not operate to align the daily Remittance amounts with the percentage of revenue that Defendant had purportedly purchased. The reconciliation provisions of the Loan Agreement were illusory.

41. Moreover, the Loan Agreement and UCC-1 failed to identify the alleged receivables being purchased with the required specificity, in violation of applicable law.

42. The unavailability of reconciliation and the failure to specifically identify the allegedly purchased receivables confirms that the Loan Agreement was a loan.

43. The Loan Agreement defined the funds available for Defendant to collect as broader than merely Plaintiff's receipts for the sale of goods and services.

44. Defendant also reserved for itself extensive recourse against Plaintiff—and Plaintiff's owner personally through a personal guarantee—ensuring Defendant's ability to collect the full Purchased Amount (and more) in the event of default. The recourse that Defendant reserves for itself extended far beyond the percentage of business revenue it is purportedly purchasing, and it even extends to circumstances where Plaintiff's intake of revenue dwindles to zero.

45. The Loan Agreement also required full, immediate payment of the entire Payback Amount in the event of default—discarding altogether the notion of payments tied to Plaintiff's revenue.

46. The principal sum advanced was repayable absolutely. Plaintiff had to keep paying until the principal was paid in full.

47. Moreover, Defendant purported to obtain security interests in assets well beyond Plaintiff's revenue that are the subject of the Loan transaction, even including Plaintiff's equipment and inventory.

48. Defendant misrepresented to Plaintiff that the funding transaction was not a loan, even though the facts and substance of the funding transaction indicate otherwise.

49. Defendant made disclaimers in the Loan Agreement to Plaintiff that it was not a loan. Such disclaimers are false. The funding transaction is, in its substance, a fixed-payment, usurious loan, and not purchases of Plaintiff's future revenue.

50. Similarly, as set forth above, Defendant also misrepresented to Plaintiff that the Remittance was determined based on a set percentage of Plaintiff's revenue, and that Plaintiff can obtain Reconciliations and Adjustments based on such percentages in the event that its revenues decline.

51. These representations are also false. In practice, Defendant required Plaintiff to repay the Loan through fixed daily Remittance amounts that were not based on Plaintiff's revenue, and Defendant took numerous measures to make it virtually impossible for Plaintiff to obtain a reconciliation or an adjustment based on declining revenues, including without limitation falsely telling Plaintiff that it was in default, refusing to reconcile the Remittance amounts with the changing revenues, and accelerating the entire amount of the Loan.

52. Plaintiff was insolvent, based on its debts exceeding its assets and the general inability to pay debts as they came due, on the dates the payments were made—and Defendant was aware of this fact at the time of the Loan Agreement and at the time of each transfer by Defendant to Plaintiff.

## IV.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: FRAUD

53. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

54. Defendant made false material misrepresentations to Plaintiff, including in the Loan Agreement drafted by Defendant, at or shortly preceding the entering of the Loan Agreement by Plaintiff. Such misrepresentations by Defendant are described in the facts section above, and include without limitation:

- Misrepresenting to Plaintiff the nature of the Loan as a purchase of Plaintiff's receivables;

- Misrepresenting to Plaintiff that the Loan Agreement is legal and enforceable when in fact it is a usurious loan, and thus void under New York law;

- Falsely representing to Plaintiff that the daily Remittances stated in the Loan Agreement are calculated based on Purchased Percent of Plaintiff's revenue;

- After entering into the Loan and after much of the funding had been paid back, falsely claiming that Plaintiff defaulted under the Loan Agreement, and otherwise making it virtually impossible for Plaintiff to obtain a reconciliation of past payments or adjustment of future payments based on the Purchased Percentage, despite declining revenue;

- Falsely representing that Defendant will adjust Plaintiff's future payments based on the Purchased Percentage of Plaintiff's revenue;

- Misrepresenting to Plaintiff the remaining balance;

- Short-changing Plaintiff on their funded amounts and overcharging Plaintiff on the fees deducted from the funding; and

- Falsely claiming that Plaintiff defaulted on the Loan.

55. Defendant intended to defraud Plaintiff by making the above statements and actions in order to get Plaintiff to enter into the usurious Loan Agreement and to illegally extract funds from Plaintiff.

56. Plaintiff reasonably relied upon Defendant's false statements and entered into the Loan Transaction. Had Plaintiff understood the actual substance of the transaction, or Defendant's manipulation of the default provisions, the lack of reconciliation ability, or the other instances of false statements described above, it would have never entered into the Loan Agreement.

57. Defendant's misrepresentations proximately caused Plaintiff harm, including the payment of usurious interest and interference with its government contracts, for which Plaintiff seeks damages to the fullest extent of the law.

. . .

. . .

Garman Turner Gordon LLP
7251 Amigo St., Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

## SECOND CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION

58. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

59. Plaintiff and Defendant had a privity or privity-like relationship giving rise to a duty of Defendant to impart correct information to Plaintiff.

60. Defendant imparted incorrect information to Plaintiff. Such misrepresentations by Defendant are described in the facts section above, and include without limitation:

- Misrepresenting to Plaintiff the nature of the Loan as a purchase of Plaintiff's revenue;

- Misrepresenting to Plaintiff that the Loan Agreement is legal and enforceable when in fact it is a usurious loan, and thus void under New York law;

- Falsely representing to Plaintiff that the daily Remittances stated in the Loan Agreement are calculated based on Purchased Percent of Plaintiff's revenue;

- After entering into the Loan and after much of the funding had been paid back, falsely claiming that Plaintiff defaulted under the Loan Agreement, and otherwise making it virtually impossible for Plaintiff to obtain a reconciliation of past payments or adjustment of future payments based on the Purchased Percent, despite declining revenue;

- Falsely representing that Defendant will adjust Plaintiff's future payments based on the Purchased Percent of Plaintiff's revenue;

- Misrepresenting to Plaintiff the remaining balance;

- Short-changing Plaintiff on their funded amounts and overcharging Plaintiff on the fees deducted from the funding; and

- Falsely claiming that Plaintiff defaulted on the Loan.

61. At the times of the misrepresentations, Defendant knew the information described above was incorrect.

62. Plaintiff reasonably relied upon Defendant's false statements and entered into the Loan Transaction. Had Plaintiff understood the actual substance of the transaction, or Defendant's

manipulation of the default provisions, the lack of reconciliation ability, or the other instances of false statements described above, it would have never entered into the Loan Agreement.

63. Defendant's misrepresentations proximately caused Plaintiff harm, including the payment of usurious interest and interference with its government contracts, for which Plaintiff seeks damages to the fullest extent of the law.

### THIRD CAUSE OF ACTION: DECEPTIVE ACTS OR PRACTICES IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349

64. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

65. The misrepresentations by Defendant are set forth above.

66. Defendant advertised and created the Loan made to Plaintiff.

67. Defendant engaged in false and deceptive acts or practices in the conduct of its business and in the furnishing of loans.

68. Defendant's conduct was materially misleading and deceptive. Defendant's conduct was likely to mislead a reasonable consumer relating to the lending instrument acting reasonably under the circumstances. Plaintiff had no way of knowing that Defendant would manipulate the loan and generate a bogus default, then fail to reconcile the loan or adjust the usurious fixed daily Remittance payments. Plaintiff justifiably relied on Defendant's false statements described above.

69. Plaintiff suffered injuries as a proximate result of Defendant's misleading and deceptive conduct and violations of New York General Business Law Section 349.

70. Plaintiff seeks recovery of its actual damages.

71. Further, because Defendant's willfully and knowingly violated Section 349, Plaintiff seek exemplary damages to the fullest extent of the law.

### FOURTH CAUSE OF ACTION – BREACH OF FIDUCIARY DUTIES

72. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

73. Defendant's control over and special relationship with Plaintiff gave rise to fiduciary duties. Among these fiduciary duties are: duty of good faith and fair dealing, duty of disclosure.

74. Defendant breached its duties of good faith and fair dealing by making the statements and undertaking the actions and omissions described above.

75. Defendant also manipulated the loan and generated a bogus default, then failed to reconcile the loan or adjust the usurious fixed daily Remittance payments.

76. Defendant's misrepresentations and grossly unfair dealing proximately caused Plaintiff harm, including the payment of usurious interest and harm to Plaintiff's business and contractual relations, for which Plaintiff seeks damages to the fullest extent of the law.

**FIFTH CAUSE OF ACTION - FRAUDULENT TRANSFERS – 11 U.S.C. §548**

77. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

78. After entering into the Loan Agreement on April 28, 2022, and continuing through late in 2023, Plaintiff paid at least $65,000.00 (the "Transfers") to Defendant based on the fraudulent and usurious Loan Agreement.

79. Among other payments constituting the Transfers, Defendant received the sum of $1,953.13 on each of the following dates: on or about May 16, 2022; May 23, 2022; May 23, 2022; May 31, 2022; June 6, 2022; June 27, 2022; July 11, 2022; July 18, 2022; August 23, 2022; September 7, 2022; September 27, 2022; October 4, 2022; October 12. 2022; October 25, 2022; November 1, 2022; November 8, 2022; December 13, 2022; December 20, 2022; and December 28, 2022.

80. Plaintiff received less than reasonably equivalent value in exchange for the Transfers.

81. Plaintiff was insolvent, based on its debts exceeding its assets and the general inability to pay debts as they came due, on the dates the Transfers were made—and Defendant was aware of this fact at the time of the Loan Agreement and at the time of each transfer by Defendant to Plaintiff.

Garman Turner Gordon LLP
7251 Amigo St., Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

82. At the time the Transfers were made or incurred, Plaintiff was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with Plaintiff was unreasonably small capital.

83. Pursuant to 11 U.S.C. §548(a)(1)(B), Plaintiff is entitled to a judgment against Defendant avoiding all of the Transfers as fraudulent transfers.

**SIXTH CAUSE OF ACTION – FRAUDULENT TRANSFERS – 544 AND NEW YORK UNIFORM VOIDABLE TRANSACTION ACT SECTION 273**

84. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

85. After entering into the Loan Agreement on April 28, 2022, and continuing through into 2023, Plaintiff paid the Transfers to Defendant based on the fraudulent and usurious Loan Agreement.

86. Plaintiff received less than reasonably equivalent value in exchange therefor.

87. Plaintiff was insolvent, based on its debts exceeding its assets and the general inability to pay debts as they came due, on the dates the Transfers were made made—and Defendant was aware of this fact at the time of the Loan Agreement and at the time of each transfer by Plaintiff to Defendant.

88. At the time the Transfers were made or incurred, Plaintiff was engaged in business or a transaction, or was about to engage in business or a transaction for which any property remaining with Plaintiff was unreasonably small capital.

89. Pursuant to 11 U.S.C. §544 and the New York Uniform Voidable Transaction Act ("UVTA"), Plaintiff is entitled to a judgment against Defendant avoiding all of the Transfers as fraudulent transfers.

**SEVENTH CAUSE OF ACTION:  RECOVERY OF FUNDS UNDER 11 U.S.C. §§550, 551**

90. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

91. The fraudulent transfers are avoidable pursuant to 11 U.S.C. §§544 and 548.

Garman Turner Gordon LLP
7251 Amigo St., Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

92. Plaintiff, the debtor in this Bankruptcy Case, may recover from Defendant, and preserve for the benefit of the bankruptcy estate, the preferential and fraudulent transfers pursuant to 11 U.S.C. §§550 and 551, along with pre- and post-judgment interest on the value of the transfers.

**EIGHTH CAUSE OF ACTION: DECLARATORY JUDGMENT**

93. Plaintiff adopts by reference, and incorporates all paragraphs above and below, as if fully stated herein.

94. The Federal Declaratory Judgment Act states that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.A. § 2201(a). Accordingly, Plaintiff seeks declaratory judgment from this Court as follows.

95. In this instance, a declaratory judgment is justiciable, because a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests regarding the Loan Agreement between Plaintiff and Defendant.

96. Defendant claims that the Loan Agreement is a lawful, non-usurious, agreement to purchase Plaintiff's revenues. Plaintiff claims that the Loan Agreement is an illegal usurious loan agreement disguised as a revenue purchase agreement. Defendant has taken monies from Plaintiff purportedly in re-payment of revenues. In reality, such funds represent payments on a usurious loan.

97. Plaintiff asks this Court for a declaratory judgment that:

- the Loan Agreement is usurious,
- the Loan Agreement is illegal,
- the Loan Agreement is void,
- Plaintiff owes nothing to Defendant, and
- the UCC liens asserted by Defendant against the property of Plaintiff are void.

. . .

. . .

. . .

**EXEMPLARY/PUNITIVE DAMAGES**

98. Defendant has acted willfully and maliciously with regard to the facts and claims asserted above. Plaintiff seeks exemplary/punitive damages against Defendant for each cause of action to the fullest extent of applicable law.

**INTEREST**

99. Plaintiff seeks all pre- and post-judgment interest for each cause of action to the fullest extent of applicable law.

**ATTORNEY FEES, EXPENSES, AND COSTS**

100. Plaintiff seeks all reasonable and necessary attorney fees, along with expenses and costs for the prosecution of this action, to the fullest extent of applicable law.

**WHEREFORE,** Plaintiff prays for and demands order and judgment against the Defendant as follows:

1. Damages in an amount to be awarded at trial, including exemplary/punitive damages and pre- and post-judgment interest;

2. Avoidance of the Transfers and judgment in the amount of the Transfers;

3. Declaratory judgment as set forth in the Eighth Cause of Action; and

4. An award of Plaintiff's attorneys' fees and costs prosecuting this Adversary Proceeding.

Dated this 25th day of September, 2024.

GARMAN TURNER GORDON LLP

By: */s/ Talitha Gray Kozlowski*
TALITHA GRAY KOZLOWSKI, ESQ.
TERESA M. PILATOWICZ, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Attorneys for Plaintiff Pigeonly Inc.*